UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASA A. ALPHONSO,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SCOTT FRAUENHEIM, et al.,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:14-cv-00884-L-JMA<br><br>**ORDER OF DISMISSAL** |

   Asa A. Alphonso ("Petitioner"), a state prisoner, filed a petition for a writ of habeas corpus under 22 U.S.C. § 2254 challenging his conviction and sentence for nine felony offenses against Michelle C. These offenses include two counts of corporal injury on a cohabitant, two counts of false imprisonment by violence, and one count each of assault by means of force likely to cause great bodily injury, assault with a deadly weapon, rape, attempting to dissuade a witness from reporting a crime, and making a criminal threat. (Lod. 2 [Doc. 17-7], 179–81.) On August 12, 2015, Magistrate Judge Jan M. Adler issued a report and recommendation recommending the prejudicial dismissal of Petitioner's 22 U.S.C. § 2254 claims. (See R&R [Doc. 17].) Petitioner timely objected to the report and recommendation (See Objection [Doc. 18].) In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made,"

and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  For the reasons stated below, the Court overrules Petitioner's objections and adopts the report and recommendation.

## I.   FACTUAL BACKGROUND

After reviewing the report and recommendation, the Court finds its factual background section to be a comprehensive and accurate reflection of the underlying record.  Accordingly, the Court adopts it as its own.  (See R&R 2:7–7:22.)

## II.   LEGAL STANDARD

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

//
//
//
//
//

### III. OBJECTIONS

Petitioner advances four objections.  He contends that the report and recommendation is erroneous inasmuch as it found that (1) the state court's alleged abuse of discretion in denying his motion for a new trial is not cognizable on federal habeas review; (2) the exclusion of Michelle C's estranged husband's testimony did not violate Petitioner's right to present a complete defense; (3) the harmless error standard articulated in *Chapman v. California*, 386 U.S. 18 (1967) does not govern here; and (4) Petitioner's *Batson* / *Wheeler* challenge based on the allegedly racially discriminatory use of peremptory challenges lacked merit.  (See Objection.)  The Court will address these objections in turn.[1]

### A.   Claim 1

Petitioner contends that the trial court abused its discretion by denying his motion for a new trial based on the allegedly wrongful exclusion of Michelle C's estranged husband's testimony.  (Petition [Doc. 1] 12:2–15:2; Objection 2:12–3:23.)  Habeas relief under § 2254 is available only for violations of federal law.  *See* 28 U.S.C. § 2254 (a).  Petitioner concedes the fact that, in his first claim, he cites only to California state case law to support his abuse of discretion claim.  (Objection 2:21–22.)  Nevertheless, Petitioner contends that his first claim presents an issue of federal law because its heading includes a reference to the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

The Court disagrees.  While the heading suggests that his first claim will allege federal constitutional violations, the fact remains that the substance of this section focuses exclusively on the alleged violation of his state statutory right to a new trial.  The mere reference to an Amendment to the U.S. Constitution, unaccompanied by any analysis or citation to authority, does not suffice to convert an issue of state law into a

---

[1] The Court would like to note that, though the trial transcript was not complete when originally filed, the electronic record is now complete (see Doc. 19) and has been fully reviewed.

federal issue cognizable on federal habeas review. *See Miller v. Stagner*, 757 F.2d 988, 993–94 (9th Cir. 1985).

### B. Claim 2

Petitioner contends that the state violated his right to present a defense by not allowing him to call Michelle C's estranged husband as an impeachment witness. (Petition 15:3–19:26; Objection 4:1–5:8.) The Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment establish that criminal defendants have "the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987).

After the prosecution rested, and outside of the presence of the jury, the trial court heard the testimony of Michelle C's estranged husband Kip Cowell ("Cowell"). Cowell testified that he married Michelle C in 1991, and the two were together for about 16 years before separating. (Lod. 1 Vol. 2 [Doc. 16-3], 387:23–388:4.) Cowell testified that Michelle C made various allegations of abuse against him during this time. Specifically, Cowell was in the Navy, and he claims that Michelle C approached the Navy with accusations that he mentally abused her, physically abused her, financially abused her, and sexually abused her. Michelle C also contacted child protective services alleging sexual abuse of their daughter. These accusations were based on Cowell's actions of engaging Michelle C in arguments that caused her stress (mental abuse); prying his work laptop computer from her hands when she refused to let go of it voluntarily (physical abuse); taking over the finances and, after separation, creating a bank account she could not access (financial abuse); not refusing her sexual advances toward him when she was under the influence of medications such as Ambien and Xanax (sexual abuse); and occasionally patting his daughter on the buttocks and kissing her on the head or neck at night when putting her to bed (child sex abuse).

Cowell's testimony, however, did not tend to suggest these allegations had no basis in reality. While Cowell's testimony indicates he did not feel that these actions amounted

to the types of abuse Michelle C was alleging, he did not deny that he engaged in these actions. Indeed, during cross-examination Cowell stated

> [a]ll these different allegations, I don't resent any of them that she's made. I believe she honestly believed them and that she made them because she felt that way and that was her option to do that. Knowing her history, I would have probably done the same thing if I was in her place.

(Lod. 1 Vol. 2, 411:17–22.) Furthermore, the Navy actually substantiated the mental abuse claim and sent Cowell to a sixteen-week anger management program. (Id. 394:21–395:16.)

After hearing and considering Cowell's testimony, the Superior Court judge stated

> the witness' testimony, at least in the court's view, doesn't frankly establish false allegations of any substance at all. I will note the court felt that was a highly credible witness. I appreciate his testimony. I don't believe this testimony would provide this jury with any relevant facts at this point. So I'll preclude the testimony based on, frankly, no probative value.

(Lod. 1 Vol. 2, 412:11–18.) The Court of Appeal affirmed, stating

> [d]ue to the strength of the victim's testimony, as corroborated by the testimony of Gorchow and Officer Sdringola and the photographic evidence of her injuries, we conclude [Petitioner] has failed to meet his burden of showing it is probable that at least one juror would have voted to find him not guilty had the new evidence been presented. Accordingly, we reject Alphonso's claims that the court abused its discretion and violated his constitutional right to present a defense by denying his motion for a new trial.

(Lod. 6 [Doc. 16-11], 31.)

This Court finds that neither the California Superior Court nor the Court of Appeal's decision was objectively unreasonable. After reviewing the transcript of Cowell's testimony, the Court finds it carried no probative force suggesting that Michelle C has a disposition such that she would likely (1) inflict injury upon herself, including by burning herself eight times with cigarettes, and then (2) cover her injuries up with make-up and (3) persuasively pretend to be scared for her life and therefore reluctant to speak with her therapist or Officer Sdringola, all to frame

Petitioner for crimes he never committed. Because Cowell's testimony thus lacked probative force, the Court of Appeal accurately concluded that, given the strength of Michelle C's testimony and its corroboration by both her therapist Sandra Gorchow and Officer Steve Sdringola, the introduction of Cowell's testimony would not have changed the result at trial. Accordingly, the Court finds Petitioner has failed to sustain his objection on the basis that he suffered prejudice from a denial of his right to present a defense.

### C.     Claim 3

Petitioner asserts that the prejudicial effect of the alleged denial of his Constitutional right to present a defense should be assessed under the "harmless beyond a reasonable doubt" standard articulated in *Chapman v. California*, 386 U.S. 18 (1967) rather than the "substantial and injurious effect" standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). (Petition 20:2–21:8; Objection 5:10–6:11.) Petitioner is incorrect. The United States Supreme Court has clearly established that a federal habeas court reviewing a state court conviction is to apply the *Brecht* standard in assessing the prejudicial effect of any Constitutional error. *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (stating "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*. . . .")

### D.     Claim 4

Petitioner contends that the rejection of his *Batson/Wheeler* challenge based on the allegedly racially discriminatory use of peremptory challenges was erroneous. (Petition 21:10–26:4; Objection 6:12–9:7.) The Equal Protection Clause of the Fourteenth Amendment prohibits the use of peremptory challenges in a racially or ethnically discriminatory manner. *Batson v. Kentucky*, 476 U.S. 79, 85–86 (1986). A necessary element of a successful *Batson/Wheeler* challenge is "a prima facie showing that the

prosecutor has exercised peremptory challenges on the basis of race." *Hernandez v. New York*, 500 U.S. 352, 358 (1991) (Citing *Batson*, 476 U.S. at 96–97).  To satisfy this element, a petitioner must show (1) that the prosecutor used a peremptory strike (2) to remove a juror of a "cognizable racial group" and (3) the totality of the circumstances raises an inference that the strike was based on the juror's race.  *Crittenden v. Ayers*, 624 F.3d 943, 955 (9th Cir. 2010).

At the time Petitioner made his *Batson*/*Wheeler* objection, the prosecutor had exercised seven peremptory challenges.  (See Lod. 1 Vol 1 [Doc. 19], 157:2–160:5.)  Petitioner objected that the prosecution had "limited every minority juror that's been on the panel so far." (Id. 160:22–23.)  During a sidebar, the court determined that three of these seven jurors appeared to be Caucasian, one was African American, one of the jurors was Hispanic and another might be Hispanic, and one of the jurors might have been of Middle Eastern descent.  (Id 161:3–163:18.)  It was also established during sidebar that Petitioner is Caucasian and the prosecutor was a Hispanic female.  (Id. 160:26–27, 161:17–18.)  Accordingly, the court concluded Petitioner had failed to establish a prima facie showing "for the systematic exclusion of individuals of any particular origin or group." (Id. 163:22–164:6.)  The Court of Appeal agreed.  (Lod. 6, 16–21.)  After reviewing the record and considering the totality of the circumstances, this Court finds that the state court's denial of Petitioner's *Batson*/*Wheeler* objection was not objectively unreasonable.

//
//
//
//
//
//
//
//

IV. **CONCLUSION AND ORDER**

For the foregoing reasons the Court overrules Petitioner's objections, adopts Magistrate Judge Adler's Report and Recommendation, and **DENIES** the Petition with prejudice. Certificate of appealability is denied.

IT IS SO ORDERED

Dated: July 5, 2016

Hon. M. James Lorenz
United States District Judge

CC: The Honorable Jan M. Adler